THE FIRST ARGUED CASE THIS AFTERNOON IS NUMBER 2010-1095, DIAMOND SAWBLADES v. United States. MR. REYNOLDS. Thank you, Judge Newman. May it please the Court, as you know, my name is Neil Reynolds, and I represent the Commission in this proceeding. Last week, Your Honors, as you know, you had the Clerk's Office call us and the other counsel and tell us to be ready to discuss the Federal Circuit's December 9, 2010, decision in the companion case to this appeal, the Diamond Sawblades Manufacturers Coalition. The reason for that request was pretty clear. In that decision, the Federal Circuit panel actually affirmed the very same lower court decision that we're challenging in this appeal. So the issue for you, and more importantly for me, is why shouldn't this panel issue a Rule 36 order in the next couple of weeks that relies on this decision? JUSTICE SCALIA. Well, perhaps we draw the appeal. JUSTICE BREYER. Or maybe even consider the appeal frivolous. MR. REYNOLDS. Well, I think, Your Honor, I think before we get to saying that the appeal is frivolous, what I would suggest to you is that the case is a case. JUSTICE BREYER. Yeah, I know. And we have a special rule right to bring to our attention intervening authority. Both sides, including you, listed this case, the case that was decided in December, as a related case whose result might well impact this case. MR. REYNOLDS. Right. JUSTICE BREYER. And that, I mean, as it happens, I don't think any of us were on that panel and necessarily kept up with it. So is there a reason? I mean, I presume you were aware of this opinion before our hearing. MR. REYNOLDS. We were. And actually, the Counsel for Diamond Saw Blades Manufacturers Coalition, Mr. Picard, brought the case to the attention of the Court in a letter to the Court that I frankly presume and assume was put before you. That letter, I believe, was in the end of December and told the Court that that decision had been issued. And actually, I think Counsel asked the Court to take that into account and I believe suggested that the Court might want to review that decision. We filed a response to that letter a week later on January 5th that recognized the decision had been issued and specifically said to the Court in the letter that we were going to come into this Court and ask you to refer this matter to the entire Federal Circuit en banc pursuant to your authority to do so under Rule 35A1. JUSTICE SOTOMAYOR. On the theory that it should be reversed? MR. REYNOLDS. On the theory that it would be overruled, yes, Your Honor. JUSTICE SOTOMAYOR. So your argument then is that our prior decision was  MR. REYNOLDS. That is correct, Your Honor. JUSTICE SOTOMAYOR. But even though you won? MR. REYNOLDS. Even though? I'm sorry. JUSTICE SOTOMAYOR. What would you discuss in that particular opinion in which you could have standing to even appeal? MR. REYNOLDS. Well, I think what you're asking is do we have standing in this appeal to bring the appeal. And as we pointed out in both our response to the motion to dismiss and then in our brief, we think that we have a clear case of standing because the lower court's decision, although it didn't issue an order of mandamus against the agency, that decision directly and clearly gave full effect, aside from liquidation, to the Commission's own decision. And by giving effect to that decision under the statute at a time in advance of the point in time that we thought the statute would otherwise have required it being given effect, we believe that our institutional interests under the statute were directly and clearly affected in a way that gives us standing to challenge because we were aggrieved by that decision, even though the mandamus didn't issue against us. JUSTICE SOTOMAYOR. Well, I don't understand. In your gray brief, you say moreover, the court, meaning the CIT there, directed the Commission in Commerce to give effect to its decision immediately. As I understood it, all the CIT did was dismiss yours as moot, is call your court moot.  EISENACH.  Correct, Your Honor. JUSTICE SOTOMAYOR. It didn't direct you to do anything. It didn't decide anything because the issue before them with respect to what mandamus on the ITC was moot because the action had already been taken. MR. EISENACH. Right. Well, I think one of the- JUSTICE SOTOMAYOR. Am I right about that? MR. EISENACH. Yes, Your Honor. The CIT specifically directed to issue the order and impose cash deposits because that is not our duty and responsibility under the statute. What our responsibility and duty under the statute is, is that we issue a decision that is a final determination or remand determination or a preliminary determination. In our brief, we pointed out that those are-that is the single, important, significant action we take during the course of an investigation. JUSTICE SOTOMAYOR. Yes, but did the CIT order you to do anything?  EISENACH. Well, what it did is it told Commerce to give us-to give effect to our decision in advance of what-in advance of the timeframe in which we should have otherwise given-that decision should have been given effect. It gave effect to our decision at the time and thereby affected-even though it did not tell us to do anything, adversely affected our interests under the statute. And it's not just the interest of having our decision given effect before. JUSTICE SOTOMAYOR. You were affected by the direction of Commerce. EISENACH. Yes, Your Honor. In an adverse- JUSTICE SOTOMAYOR. Why did you-did you intervene as a party then when Commerce sought to challenge the order with respect to Commerce? Because it seems to me that to the extent you're correct, and I'm not sure I agree that you are- EISENACH. Right. Right, Your Honor. JUSTICE SOTOMAYOR. That's the way you would challenge it. EISENACH. Right. JUSTICE SOTOMAYOR.  And that's the opinion that we-was before this Court and which was decided in December. EISENACH. Right.  And that might give you an argument to go in and try to   Right. Correct. JUSTICE SOTOMAYOR. Some sort of steps in that. I'm not sure that answers the question about why you have standing with respect to this appeal. EISENACH. Right. The-to answer your question about intervention, the rules do allow us to seek intervention. I think we might have sought intervention in this case. JUSTICE SOTOMAYOR. Because you're saying the only injury that you've identified with respect to the Commission was-I'm having a hard time understanding. EISENACH. Right. JUSTICE SOTOMAYOR. It was sort of as a result of what Congress was doing. EISENACH. Actually- JUSTICE SOTOMAYOR. Congress was doing something that effectuated what you were doing. EISENACH. Actually, that isn't the only injury that we're talking about in the Court's decision. But-and I can address that. Let me talk about the intervention question first, and then I'll talk about the other issues on injury that we're grieved by, the other grievances that we have. The-when we filed our appeal, I believe it was after the DOJ filed its appeal, and it was certainly after-well after, I believe, the defendant intervenors in that case-in our case-filed their appeals of the Commerce action, the mandamus action. At the time we filed appeal-our appeal shortly thereafter, the defendant intervenors called us up and called the Department of Justice up and suggested that the two cases be consolidated. We agreed to that. We thought that was a good idea because of the similarity of issues involved. We consented to that decision. The Department of Justice chose not to consent to that decision, and-and for reasons that I would prefer not to get into that reflect our discussions with them, and we had extensive discussions on the issue, we decided not to seek consolidation. We decided not to push the idea of consolidation, as did intervenors. The issue of intervention was an issue we did address and think about, but again, out of deference to the DOJ's concerns, we agreed not to-we chose not to seek intervention. At the time, we believed that we had standing, and it wasn't just this issue of the institutional interests under the statute. And by the way, there is-there is a statement in the Coasteel case, if you look at it, that talks about the fact-and I can-I can-I can give you the site-that the Commission should have a situation-should not be barred from appealing a matter, a decision of the lower court, if it would prevent the Commission from challenging adverse CIT decisions that the Commission felt were injurious to the administration of the anti-dumping scheme. That's at 357 F. 3rd, 1305. That is a statement, and in that-in Coasteel, as you know, there was a question of jurisdiction and whether the Court should maintain jurisdiction because the Coasteel's-the preliminary determination had become affirmative during the appeal process. That statement says that if we believe that our-the early administration, in our view, of the dumping laws is affected by CIT decision in which we're affected, then we do have standing. The other most important issue is that, as we pointed out in our-in our standing motion and our brief, it isn't simply the idea that we weren't directed to do something. Even if we were arguably prevailing on the issue of the mandamus order, we are allowed, under the case law, to-to file an appeal of collateral or necessary or related parts of that decision and order by which we are aggrieved. When the Court issued its order and told Commerce to publish an order a year before it was supposed to, it would otherwise have done so under the consistent practice of the agencies, that specifically altered our obligations under the statute. And altering our obligations and responsibilities under the statute is something that the cases we cited in our brief, such as ITC Vitenico and Gerdau, have actually said is sufficient standing for it to challenge an action. Let me move on to the merits before your time runs out. Sure. So are you conceding-do you agree that all of the legal arguments made in your brief were disposed of in the December opinion by this Court? No, actually, Your Honor. I think- Well, I'm not saying that's trying to seek en banc review, recognizing it's the only way we can go about it. No, I think what I was saying specifically is that the specific holding in that case is what we're challenging. The Court said the low court did not err by ordering Commerce to issue an order and impose cash deposits on the subject imports. And you recognize that we can't-as a practical matter, can we overrule-can we find for you without overruling the panel decision? No, you couldn't.  That specific holding, you could not overrule that right now as a panel. You have to do it en banc, which is why in the 35A1, you would need to-and this is the argument we've made in the letter we sent to you on January 5th-that's-you would need to refer to the panel en banc, the circuit en banc, for rehearing en banc to assess whether it's appropriate to overrule it. To answer your question about are there new issues, that aside from that holding, the Court's decision doesn't address a number of issues that we think are actually specific and problematic for the Court. For example, the Court never once discussed or addressed the issue of the impact of 1516A.C.3, which is the provision of 1516A that talks about remanding a final court decision that is not in harmony with it to the Commission to take final action in accordance with that decision at the end of all appeals. We had a very different view of that provision than the low court. I don't believe it was addressed very specifically at length in the briefs of the parties in the other case. That's a situation-that is a decision-that is an issue that is not addressed here. The- But are you saying that the remand is treated differently? Yes. In a direct appeal? Yes. And actually, that-by the way, Judge Prost, this is another issue that the Court didn't address directly in its- Well, I'm not the judge. No, no. Let me-there's an argument we're making in our brief that the Court didn't specifically address. That's- In Judge Preston's opinion, I thought it was pretty clear on that. It was. And the issue that we raised in our brief is an issue that they didn't address. It's a specific aspect of that argument. The panel definitely said that this is a final determination and that a final determination, whenever made in remand or during the course of the final investigation, is clearly subject to 1673DD. The problem with that is the Court never grappled with the actual language of 1673DD. 1673DD and 1673D don't refer to remands at all. The panel recognized that. The issue in 1673DD is it says notice in publication by the Commission of Commerce is required whenever the Commission makes a determination, quote, under this section. The decisions-and this is an argument. It didn't actually address that specific language of under this section. Our briefs below the Court and here emphasize heavily that the words under this section mean decisions issued in a final investigation during the course of the final phase investigation of the Commission. But how were you injured by that? What is the injury? Well, the injury- Understanding. Well, again, as I said earlier, I think I said this actually. Now I think I might not have. When the order was issued a year earlier, we now have to issue and conduct sunset reviews a year earlier than we otherwise would have. We now have to conduct changed circumstances reviews, if requested, a year and a half earlier than we otherwise would have. Now, when you consider the injury to the Commission that you might have to do something a year early- That's correct. Does the Commission make any attempt to balance that against possible injury to an intervener or a petitioner or a complainant? Or you're telling us to consider only how it affects the Commission? Well, actually, Your Honor, what I was saying is that this is specifically geared towards Judge Gaier's and Judge Prost's questions about standing. And in standing, the issue really isn't about balancing harms and weighing conflicting injuries the same way it would be- So the answer is no, that you don't consider the effect on the public or the institution? Well, in the case of our- Well, we do when we're- I mean, in the context of our arguments about the institutional injury, I think that would be a factor that actually weighs in our favor, which is- And was it considered here? We didn't specifically consider those issues in our determinations because those aren't part of our specific determinations. They are certainly part of our arguments about standing on appeal because we believe that when in order, part of our interest in having orderly conduct of the administrative process and making sure it is conducted properly under the statute, which is what gives us in part standing here- Well, in that case- Is the public interest in not having an order issued before trial. We've exhausted your time, but we'll give you some rebuttal. Thank you. But I intend to ask the representative. Are you representing Diamond Saw Blades? I am, Your Honor. Good afternoon, Your Honors. Okay. For the record, my name is Daniel Pickard of Wiley Rhine. I'm here this morning on behalf of the Diamond Saw Blade Manufacturers' Coalition. Could you clarify, at least for me, what the effect of these various delays and publications and enforcement and non-enforcement and so on from the proceeding, if any? And if there's none, that would be helpful to know. In regard to the current issue, Your Honor, or more from a- Well, of course, it's a question of standing, but the standing arises from the entirety of these questions of the relationship between commerce and the commission and the publication and the enforcement and so on. Yes, Your Honor. At this stage of the proceedings, I don't believe there really is an effect in regard to the judge's decision not to grant our previous request. You say, at this stage, this has been going on for quite a while? Yes. Has there ever been an effect, or is this entirely a matter of clarification and neatness of procedure? In regard to this separate appeal, in regard to the ITC, I'm not sure there was a legal effect. There clearly was an issue in regard to our separate request for a writ of commerce. That was granted. It resulted in the issuance of an anti-dumping order, which had tangible effects in the marketplace. It resulted in the collection of anti-dumping duties on previously unfairly priced imports coming into the country, which clearly resulted in a benefit to our clients. In regard to the current matter, I think there's a variety of mootness arguments connected with the ITC's appeal here, the most straightforward of which is the fact that our request for a writ of mandamus was denied, that from a very straightforward point of view, the ITC was the prevailing party below. They made arguments saying, well, there might have been a legally, one of their legal interests were interfered with by the court's decision. To the extent that there's a legal interest, this court has clarified that the ITC was required under the law to publish the Federal Register Notice. But they're claiming, if I understand it correctly, that they have a legal interest. I mean, the practical action is that they publish it or print it or whatever, but they have a legal interest in when what they've done is actually implemented, and they have a stake in that, right? That's their argument that that's what their injury is. That's what I understand their argument to be. And not only because that tangibly affects the date that the duties are collected, but also, as the other gentleman mentioned, for purposes of sunset reviews and future actions. So why are they wrong about that? Why isn't that a tangible enough injury to convey standing? Because their alleging their injury is something that this court has already definitively stated. It's something that they're required to do. Their interest in not doing something that is required by the statute is not a legal interest. But they're saying they have a further interest in the implementation of what it is they are required to do in the timing of Commerce's implementation because that affects other of their duties under the statute, which is not tariffs. It's a pretty theoretical and speculative injury that somewhere down the road they might be faced with a change circumstances request that they might have to deal with earlier than they would. That being said, even the fact that they're going to conduct a sunset review a year earlier than they would have had they, had the court not ordered the Department of Commerce to issue writ of mandamus, I don't think that's an injury that flows from the issue before you today. That adds to a separate appeal where the ITC has conceded they could have moved to intervene, but they were never a party to. So not only are there significant aspects of mootness to this appeal, but they also, I would suggest, don't even have standing to bring the appeal because they're essentially challenging a decision in a court appeal that they were never a party to. Well, the injury might eventually take place if they have to do their review a year earlier. If conducting... Even if they do. With all due respect, Your Honor, to the extent that they have to do something that they're legally required to do... A year earlier. Right. Which was found to be, by this court, actually to have been required. Right? I don't know how having to do something pursuant to a court order that the court has found that you are statutorily required to do amounts to injury. Well, I'm still having problems as to the commission's standing, notwithstanding Mr. Reynolds' well-articulated attempts to establish an injury. Is there an injury, in fact, against the commission? I would suggest not. I think there's a variety of levels of mootness, as I was indicating. First, that they prevailed below. Two, that there's no injury in the fact that this court has clarified that they were supposed to issue the Federal Register notice. They were never forced to do so. But the fact that they don't want to do something that a court has already said that you are required under law to do is not an injury. That's compliance with the law. On top of that, there's another level of mootness, in fact, that a large part of their arguments were premised upon the idea that this is a premature action, right? That we should not be forced to do so until there's a final and conclusive determination by this court. So it's hard to remand that. Correct. But there is now a final and conclusive determination in regard to the ITC's injury determination. The time for the petition for cert has expired. So there's an element of mootness there, on top of the standing concern that you had raised earlier, that they failed to intervene in really what they're trying to get to. They're trying to get to or they're alleging the injury essentially being connected with the writ of mandamus, which I would also point out is completely unrelated to publication of the Federal Register notice. The obligation for the Department of Commerce to issue its anti-dumping order became effective when the ITC transmitted its opinion to them. That it did. That issue has come before this court. It's been satisfactorily resolved. The ITC is alleging an injury connected with running its Federal Register notice, which is in no way legally connected with the actual issuance of the anti-dumping order. Do you agree that there are issues, if you get to the merits of it, that there are issues raised by the ITC's brief here that were not disposed of by our court in its December opinion? I do not, Your Honor. I believe that the previous decision in regard to the writ of mandamus connected with the Department of Commerce's appeal explicitly and specifically resolves all of the issues or all the pertinent issues that were raised by the ITC's brief. But aren't there arguments that the ITC is making here that weren't necessarily made to the prior path? There's only one that I'm really aware of, and quite frankly, Your Honor, I believe it's almost entirely irrelevant. They have made some arguments that were not made by the Department of Commerce in regard to the citation for the Court of International Trade's remand authority. Whether if it was really pursuant to 1516A sub c3, or if it was part of another part of the statute. I don't see how that's in any way relevant to the matter before this court. The ITC in their opening brief has said the central or the most important issue in this appeal is whether a remand determination takes the place of the previous determination. This court has explicitly said it absolutely does, regardless of whether it's subject to an appeal or not. And the government never sought rehearing in the December case? Correct. Nor did they petition for cert? Okay. Any more opinions for this group? Any more questions? Anything else you need to tell us? Only to the extent that there are any questions from the court, I'm happy to answer them. Okay. Perhaps to just briefly sum up, I would say that there are a variety of ways that this appeal should be denied. Muteness, standing, or the fact that this court's most recent decision specifically answers the questions before it. And that is, when the ITC issues a new determination, it is a 1673D determination, and it is legally operative to the extent that a regular 1673D determination is issued. But there's obviously a different consequence to which of those we pick. If we pick the last, then they get a second bite at the potential for rehearing en banc, right? I mean, if we reach the merits and just say we're bound by the panel, then they can come in and seek rehearing en banc. They certainly may request so. Whereas if we go on muteness or standing, they can't. Correct, Your Honor.  Thank you, Mr. Picard. Thank you, Your Honor. Mr. Reynolds, you have a couple of minutes to rebuttal. Thank you, Your Honor. I really appreciate getting the extra time. And I know that especially given the decision in December. Let me quickly address standing. Mr. Picard suggested that perhaps our arguments about the impact of the order on our sunset review obligations and making it earlier. The way he described it suggested that it's a hypothetical result of that. It isn't hypothetical. We will have to do that sunset review, no question, one year earlier. The other thing I would point out on standing is. Well, what is the injury of making it one year earlier? You still have to do it. Well, we do. But the commission, by having it require us to do it one year earlier, it actually brings our responsibility for that sunset review into requires us to do it at the same time as all the other sunset reviews that we are actually scheduled to do. And that schedule is on a predictable basis because it's always done over the period of five years. And what happens here is, especially during a period in which the agency is under severe budgetary restraints, taking a sunset review and adding it as yet another obligation during the course of a period of time where we have limited staff, we can't add staff, and it's going to be yet one more thing that we're going to have to do before. Well, I don't understand. I mean, I understand timing is important, but your position is that, no, they should have waited to implement it until after there was final review. Correct. But nobody knows. I mean, final review in some cases can be one month. Yes. And in other cases can be five years. Absolutely. So it seems like the difference between, you know, six months or a year in terms of commission planning, you're talking about stuff that happens that's outside your control in any event. Actually, you know, what's funny is you've just put your finger on the issue that I was talking about, which is because we're now required, the order was issued, whether or not how long that appeal lasts, sometimes we've had appeals last six, seven years, we're going to be required to do that sunset review even if the – So in terms of resource planning, which I thought you were describing as your injury, you can't be using that timeframe as a means of normal planning because that's never the case. You never know whether you've got – I mean, you could have 10 cases pending in court and the courts could speed up their processes and you could all get them in 20 minutes as opposed to 15 years that another court may take. So I'm just suggesting that the notion of a tangible injury by the difference in a year's time seems to me a little rough in an area where you can't predict – Well, in this case, and standing is always specific to the circumstances of every case, as you know, in this case, when that order went out, all the hypothetical concerns about whenever it was going to happen was going to happen actually changed, and we knew at that point we were going to need to do the sunset review before we would otherwise have to do it in this case. So that's an injury. That's what you would say is an injury. Right. One other thing that I want to point out, and I don't want the Court to miss this, is there's yet another injury here. We point to this. The Court unquestionably allowed Commerce to publish a notice of our decision as a final decision. That is, it said that the Commerce Department's notice, Timken notice, constituted actual publication of our decision as a final determination. And under the statute – That's the Court, meaning our Court. No, no. Actually, now your Court. The CIT. The CIT is the one I'm talking about, because that's the order we appealed, and this is about standing. That order took from us and gave to Commerce our right to declare what our decisions are, when they're effective, and how they're to be considered by Commerce. And that is something that is unquestionably the case. Until November 10, 2010, which was last year, we hadn't published notice of our decision as a final determination because the Court removed our authority to do so under the statute and gave it to Commerce. Okay. Thank you. We will take it under advisement. Thank you, Mr. Reynolds and Mr. Picard. The case is under submission.